OaRütheRS, J.,
delivered the opinion of the Court.
A question of priority of satisfaction, between the complainants and defendant, Rice, out of the proceeds ©f a negro girl slave, named Mary, is raised in this ease. Both are creditors of defendant, Robert W., the owner of the slave, and one must lose, as Robert is insolvent, and the fund not sufficient to satisfy both. The Chancellor decided in favor of Rice.
Facts: The eornplainaats, Acuff, Billmgsly, and Greer, became liable as endorsers in Bank for Robert, i» a note dated November, 1856, which they have paid. On the 15th of March, 1857, to secure themselves against loss, they took a mortgage on five acres of land, t© which said Robert had an equitable right by bond, with an incumbrance of $167 of unpaid purchase-money. This mortgage-deed was duly registered. On the 9th of January, 1858, Robert sold the same land to said Rice for $450, and assigned to him his title-bond. Rice had no actual knowledge, as it seems, of the mortgage upon the land, hut was informed that there was still remaining due to> the vendors $167. To relieve' the land of that, he caused the said Robert to secure its payment by a deed of trust upon his negro girl, Mary. There were other deeds of trust upon the slave, which had been ratified, with the exception of a balance of about $140 due to Rankin. This bill was filed on the 14th of April, 1858, to foreclose the mortgage upon the land, as the said bank debt had fallen upon complainants. Rice, among others, was made a defendant on account of his elaim to the land. Charging that the land would fall far short of indemnifying them, and so it turned out, they ask that whatever equitable interest the said Robert has in the slave Mary, after discharging the liens upon her, be applied to'the satisfaction of the balance that may remain of their claims beyond the value of the land. The trustees and beneficiaries in the deeds for the slave are made parties. Rice answered this bill on the 28th of April, and, on the fifth of the next month, filed what is called a cross-bill, to attach the slave Mary, to *295 fiave her sold to satisfy his claim of $450 — the consideration paid for the land in the event it should be taken from him by the prior title of the original complainants. The attachment was issued and executed.
By an interlocutory deeree, the debt of complainants was declared to fee $678, that of Rice $463.95, the vendor’s lien $183.37, and the balance due to Rankin on the slave $141. The land and slave were decreed to be sold. The land sold for $250, and the slave for $710.
The Chancellor, in his final decree for the distribution of the fund, ordered that the vendor’s lien should be discharged out of the proceeds of the land, and the balance thereof, after paying the cost of the original suit, should be paid to complainants ; and after deducting the cost of the cross-bill, and paying Rankin his debt of $141, Rice should fee paid his debt of $463.95, out of the proceeds of the slave, and if any balance remained, it should go to complainants. This would leave only $67, after deducting the $183, of the priee of the land, out of which the costs, amounting to $38.68, are to be first paid, and the balance of $29, only, to go to the complainants. The costs of the cross-bill amounting to $70.45, and the amount due to, Rankin $141, being deducted from the $710, for wbieh the slave sold, would leave $498.55. So Rice would get bis whole claim, and leave $34.60 for complainants, making in all for them $63.60, leaving a loss of $614.
It seems to us very clear, that the $183.37 due to the original vendor, should be paid out of the proceeds of the slave, and not the land, as between the common creditors. The véndor could look t© either. The land, because of his lien upon it; and the slave, because of the deed of trust. The common debtor, at the instance of Rice upon his purchase of the land, interposed the slave for the relief of the land as to the lien for this unpaid purchase money. It would be inequitable, now that conflicting interests have arisen, to throw this burthen back upon the land, where it is not necessary for the protection of the vendor’s debt. Both funds are liable *296 to him, and he has, therefore, no interest in the question-. This $ 18S, then, should he paid out of the proceeds of the slave, instead of the land, and would leave $¡521. How this should be appropriated, is a more difficult question. The complainants, in the original bill, are first in time, and are properly in Court to foreclose their mortgage; hut they go-beyond that,, and aim to- reach the equity of their debtor in the slave, forth© satisfaction of whatever may remain of their debt after the application of the land. They are not judgment creditors with an execration at law returned nwlla bona. Without this, can they come into a Court of Chancery to reach the equitable rights of their debtor in this slave l If they can, then they have a lien fixed by their suit, and Rice could not prevail against them, even by attachment properly and legally issued, because by the doctrine of Us pendens, having asserted their right to have satisfaction out of that particular property,, neither the debtor by sale-, or any one coming- in upon his-rights, could defeat them by suit or otherwise. Rut have they any standing in Court upon this part of their case without-judgment, &c., at law, so as to prodjuce these results ? But it is a serious question, whether the failure to demur to that part of the hill removes the difficulty since the act of 1852. Upon the other hand, Rice obtained his attachment without any sufficient ground laid in his bill, and could hardly he regarded a& a creditor at that time, as the land had not then been taken from him. But there is no plea or demurrer to his bill. Without deciding these questions, now, under all the circumstances, we think it would be just and equitable to regard them both as general creditors, and that after discharging the lien upon the slave in favor of Rankin, and of the vendors of the land under the two- deeds of trust, and paying the cost of the cross-bill, the remainder of the proceeds of the slave shall be equally divided between the complainants in the original and the cross-hills, as their debts are nearly equal, after applying-the land to Acuff’s claim. The proceeds of the land, after paying the costs of the original bill, shall he paid to Acuff, *297 the mortgagee. This will leave a loss of nearly an equal amount upon both parties.
The decree will be so modified, and the causes remanded for execution of the decree.